**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 16, 2017**

# In the Court of Appeals of Georgia

A17A0765. THE GEORGIA DEPARTMENT OF
TRANSPORTATION v. BALAMO.

MILLER, Presiding Judge.

Samuel Che Balamo sued the Georgia Department of Transportation ("GDOT")
after he was injured when he lost control of his car on a wet road in 2005. GDOT
moved to dismiss for lack of subject-matter jurisdiction due to sovereign immunity
or, alternatively, for summary judgment on the ground that Balamo had not
established the elements of negligence. The trial court denied both motions, and this
interlocutory appeal ensued.[1] We conclude that Balamo's claims are barred by

---

[1]After the trial court denied the motion to dismiss, GDOT filed a direct appeal,
which this Court dismissed because the Supreme Court of Georgia subsequently held
that GDOT was required to follow the procedure for interlocutory appeals. See *Rivera
v. Washington*, 298 Ga. 770, 777-778 (784 SE2d 775) (2016). GDOT then moved the
trial court to vacate and reinstate its previous order to permit GDOT to seek
interlocutory review. The trial court did so, and this Court granted GDOT's

sovereign immunity and thus the trial court should have dismissed Balamo's claims for lack of subject matter jurisdiction. Accordingly, we reverse.

"We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law . . . . [F]actual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them." (Punctuation and footnote omitted.) *Ga. Dept. of Corrections v. James*, 312 Ga. App. 190, 193 (718 SE2d 55) (2011), overruled on other grounds, *Rivera v. Washington*, 298 Ga. 770, 778, n. 7 (784 SE2d 775) (2016); *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 673 (1) (b) (570 SE2d 1) (2002) ("under OCGA § 50-21-24, waiver of sovereign immunity may be a mixed question of law and fact for the trial court's determination").

So viewed, the record shows that around 5:50 a.m. on November 29, 2005, Balamo was driving towards Milledgeville on State Route 24 on his way to work. It was raining at the time, and he was driving between 40 and 45 mph. As the rain increased, Balamo tried to slow down, applying the brakes as he began to travel downhill. Nevertheless, he lost control of the truck, crossed into oncoming traffic,

application for interlocutory review.

2

and collided with a tractor trailer. As a result of this accident, Balamo was seriously injured.

Balamo sued GDOT under the Georgia Tort Claims Act ("GTCA"), OCGA § 50-21-20 et seq., alleging in his complaint negligent road design and operation. Attached to the complaint was an affidavit from an expert, Herman Hill, opining that the road failed to comply with accepted standards for design and maintenance. GDOT moved to dismiss for lack of subject-matter jurisdiction, arguing that it was immune from suits based on negligent design of the roadway under OCGA § 50-21-24 (10). Alternatively, GDOT moved for summary judgment on the elements of negligence. The trial court denied the motions, and this interlocutory appeal followed.

1. In its first enumeration of error, GDOT argues that Balamo's claim is one for negligent design of the road and, as such, is barred by sovereign immunity. We agree.

Under Article I, Section II, Paragraph IX (e) of the Georgia Constitution of 1983,

> sovereign immunity from suit extends to all state departments and agencies unless properly waived through an act passed by the General Assembly. . . . Sovereign immunity is waived by a legislative act only if the statutory language specifically provides that sovereign immunity is waived and the extent of such waiver.

(Citations and punctuation omitted.) *Pelham v. Bd. of Regents of the Univ. System of Ga.*, 321 Ga. App. 791, 793 (1) (743 SE2d 469) (2013). The GTCA waives the state's sovereign immunity for torts committed by state officers and employees acting within the scope of their official duties or employment. OCGA § 50-21-23. The conditions and limitations of a statute that waives immunity must be strictly followed. *Ga. Dept. of Labor v. RTT Assoc., Inc.*, 299 Ga. 78, 83 (2) (786 SE2d 840) (2016).

The waiver of immunity in the GTCA is subject to certain exclusions, including when the roadway's plan or design substantially complies with the generally accepted engineering design standards. See OCGA § 50-21-24; *Diamond v. Dept. of Transp.*, 326 Ga. App. 189, 190-191 (1) (756 SE2d 277) (2014); *Pelham*, supra, 321 Ga. App. at 794-795 (2) (citation omitted). Thus, the state remains immune from suits arising out of

> [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design.

OCGA § 50-21-24 (10).

4

Whether GDOT is entitled to sovereign immunity based on the design exception in OCGA § 50–21–24 (10), "is a threshold issue that the trial court was required to address before reaching the merits of any other argument." (Citation omitted.) *Gonzalez v. Ga. Dept. of Transp.*, 329 Ga. App. 224, 225 (764 SE2d 462) (2014); *Sadler v. Dept. of Transp. of the State of Ga.*, 311 Ga. App. 601, 603 (716 SE2d 639) (2011). "[I]f [GDOT] is entitled to immunity under . . . OCGA § 50-21-24 (10), then the trial court lacks subject matter jurisdiction to try the negligence claims, and the suit must be dismissed." *Gonzalez*, supra, 329 Ga. App. at 225-226.

As the party seeking to overcome the state's immunity, Balamo bore the burden of showing that an exception to immunity applied. See *Diamond*, supra, 326 Ga. App. at 190 (1). To avoid application of immunity under OCGA § 50-21-24 (10), Balamo must submit "expert testimony or other competent evidence . . . to show that the plan or design was not prepared in substantial compliance with generally accepted engineering or design standards at the time such plan was prepared." (Citation omitted.) *Dupree*, supra, 256 Ga. App. at 677 (2). See also *Murray v. Dept. of Transp.*, 240 Ga. App. 285, 285-286 (523 SE2d 367) (1999) ("Road design requires professional engineering services. Unless [Balamo] can produce an engineer's competent testimony that the [G]DOT's design . . . was not in substantial compliance

5

with the applicable engineering and design standards, [his] claim cannot withstand the [G]DOT's motion." (citation omitted)). Moreover, "[n]ot only does [OCGA § 50-21-24 (10)] exempt [G]DOT from liability for highway design deficiencies where the highway was initially designed in substantial compliance with existing design standards, it exempts [G]DOT from liability for its failure to upgrade a highway to meet current design standards." (Citations and punctuation omitted.) *Dept. of Transp. v. Cox*, 246 Ga. App. 221, 223 (540 SE2d 218) (2000). As we have explained:

> In determining the extent of the [G]DOT's liability under the Georgia Tort Claims Act, we must construe its provisions in a manner that will uphold it in every part. Under this rule of construction, we find that if the [G]DOT is exempt from liability for its initial design of a highway under the Georgia Tort Claims Act, it would make little sense to permit liability for failing to change that initial design. Allowing liability in such cases would effectively eliminate the protection provided the [G]DOT under OCGA § 50-21-24 (10).

(Citation omitted.) Id.

Here, the expert testified that during a resurfacing project in 2000, the roadway's cross slopes[2] should have been increased to enable water to drain off the

---

[2] A cross slope "drains water from the roadway laterally and helps minimize ponding of water on the pavement." See https://safety.fhwa.dot.gov/geometric/pubs/mitigationstrategies/chapter3/3_crosssl

6

roadway more quickly. Admittedly, the 2000 project called for an increase in the cross slopes in the relevant area.[3] The expert, however, did not testify that the cross slope of the road following the 2000 resurfacing project failed to meet industry design standards. In fact, although the expert opined that the relevant portion of the roadway should exceed the minimum industry design standard, he admitted that the cross slopes as designed met the minimum industry standards. Moreover, the expert testified that he did not know the actual calculations of the cross slope in the relevant section of the highway.

The trial court found that GDOT was not entitled to immunity. We cannot agree. First, Balamo has offered no testimony that the design of the roadway was negligent, despite the allegation in his complaint that "the excessive amounts of rainwater . . . were caused by the *negligent design, construction and operation*" of the highway. (Emphasis supplied.) Instead, the expert testified that the design was "fine," but the maintenance of the road was an issue. It is Balamo's burden to establish a

---

ope.cfm. In other words, the cross slope "is designed to get water off the road."

[3] Although the expert's testimony implies that the 2000 resurfacing project did not include increasing cross slopes in the relevant area, GDOT concedes that the 2000 resurfacing contract provided for changing the cross slope in the area of Balamo's accident.

design defect through expert testimony. Where, as here, the expert fails to connect the accident to any *design* flaw, Balamo has not met his burden. See *Diamond*, supra, 326 Ga. App. at 190 (1); *Dupree*, supra, 256 Ga. App. at 677 (2). If Balamo had met his burden of providing evidence of a design flaw, this would be a different case.

Further, the expert's attempted characterization of the issue as maintenance rather than design is not only inconsistent with Balamo's allegations in his complaint, it is inconsistent with the expert's own testimony. The expert essentially opined that GDOT should have changed the geometric design of the road by increasing the cross slopes. But this is not a maintenance issue. *Cox*, supra, 246 Ga. App. at 223 (maintenance "does not usually involve a change to the geometric layout of the roadway."); see also *Ga. Dept. of Transp. v. Crooms*, 316 Ga. App. 536, 537 (729 SE2d 660) (2012) (improvements to the original design of road, not to remedy wear or deterioration are not maintenance issues) (physical precedent only), overruled on other grounds by *Rivera*, supra, 298 Ga. at 778, n. 7. The essence of Balamo's claim is that GDOT negligently designed the road, and he cannot avoid the State's immunity simply by describing it as something else. *Dept of Transp. v. Jarvie*, 329 Ga. App. 681, 685 (766 SE2d 94) (2014), overruled on other grounds by *Rivera*, supra, 298 Ga. at 778, n. 7 ("Nomenclature notwithstanding, the substance of a claim

must be considered, and a party cannot do indirectly what the law does not allow to be done directly." (footnote omitted)).

The true nature of the expert's testimony related to GDOT's alleged failure to change the cross slope after multiple accidents, rather than the cross slope's failure to meet industry design standards. Regardless of how the expert attempts to frame the issue, our case law is clear. GDOT is exempt from liability if the road substantially complied with industry design standards. The expert's failure to testify that the cross slopes did not meet industry standards is fatal to Balamo's attempt to overcome immunity under OCGA § 50-21-24 (10). *Brown*, supra, 218 Ga. App. at 179.

Given the expert's testimony, Balamo has not met his burden to put forth evidence that the cross slope failed to comply with industry standards, and thus this claim is subject to the immunity provided by OCGA § 50-21-24 (10). See *Crooms*, supra, 316 Ga. App. at 537-538.

Moreover, to the extent that Balamo argues that GDOT was also negligent in failing to use better asphalt or installing "slippery when wet" signs, those claims are design claims that are also barred because Balamo has not shown that either of these options was industry standard at the time the road improvement at issue was designed. See *Crooms*, supra, 316 Ga. App. at 537.

Finally, to the extent that Balamo raises allegations that driveways connecting to the road increased the amount of rainwater on the road, his expert testified that the driveways were "built under permit." Given that this claim would arise from GDOT's approval of a permit for the driveway construction, GDOT would also be immune from suit. See OCGA § 50-21-24 (9) (the State is immune from suits arising from the issuance of a permit); *Cox*, supra, 246 Ga. App. at 224. Balamo's expert did not provide any such testimony.

Accordingly, on this record, Balamo has not meet his burden to show any exception to the State's immunity, and the trial court erred in denying GDOT's motion to dismiss the complaint for lack of subject matter jurisdiction. See *Cox*, supra, 246 Ga. App. at 223-224; *Crooms*, supra, 316 Ga. App. at 537-538; *Dupree*, supra, 256 Ga. App. at 677 (2). We therefore reverse the trial court's order on this ground.

2. GDOT alternatively argues that it was entitled to summary judgment because Balamo cannot show the elements of negligence.[4] Because we conclude in Division

---

[4] In his response to GDOT's motion to dismiss or for summary judgment, Balamo argued for the first time on appeal that GDOT had a duty to maintain the road under OCGA § 32-2-2 (a). This is not the claim Balamo raised in his complaint, and he cannot amend his pleadings through a response to summary judgment. See *Jahannes v. Mitchell*, 220 Ga. App. 102, 104 (1) (469 SE2d 255) (1996).

that GDOT was entitled to immunity, we need not address this issue. See *Gonzalez*, supra, 329 Ga. App. at 225-226.

*Judgment reversed. Doyle and Reese, JJ., concur.*

---

Additionally, as discussed above, the expert's complaints do not sound in maintenance, as they relate to the geometric design of the roadway. *Cox*, supra, 246 Ga. App. at 223.